Joseph C. Delmotte (SBN 259460)
jdelmotte@aldridgepite.com
Gilbert R. Yabes (SBN 267388)
gyabes@aldridgepite.com
**ALDRIDGE PITE, LLP**
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
Telephone: (858) 750-7600
Facsimile: (619) 590-1385

Attorneys for
MEB Loan Trust

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA - OAKLAND DIVISION

| | |
|---|---|
| In re<br><br>GARY LAFLEUR,<br><br>       Debtor. | Case No.19-41714-RLE<br><br>Chapter 13<br><br>**MEB LOAN TRUST CONDITIONAL NON-OPPOSITION TO DEBTOR'S MOTION TO SELL REAL PROPERTY**<br><br>**PROPERTY:**<br>938 Country Glen Ln, Brentwood, CA 94513<br>**Hearing:**<br>Date:    October 9, 2019<br>Time:    1:30 P.M.<br>Ctrm:   201<br><br>1300 Clay Street, Suite 220<br>Oakland, CA 94612 |

**COMES NOW,** MEB Loan Trust ("Creditor"), by and through its undersigned counsel, hereby submits its Conditional Non-Opposition to Debtor's Motion to Sell Real Property ("Motion To Sell").

### I.    STATEMENT OF FACTS

1. On March 16, 2007, Gary LaFleur ("Debtor") and Tanya L. LaFleur (collectively the "Borrowers") executed a promissory Note in the principal sum of $183,955.00 (the "Note"). The Note is secured by a deed of trust (the "Deed of Trust") executed by the Borrowers on the

- 1 -

real property located at 938 Country Glen Ln, Brentwood, CA 94513 (the "Property").[1] The Deed of Trust reflects that it was duly recorded. Copies of the Note and Deed of Trust are collectively attached hereto as Exhibit A.

2. On January 30, 2016, the Borrowers and Respondent agreed to modify the Subject Loan. A copy of the Loan Modification Agreement is attached hereto as Exhibit B.

3. On July 29, 2019, the Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California - Oakland Division, and was assigned case number 19-41714-RLE.

4. On September 26, 2019, the Debtor filed a Motion to Sell Real Property seeking authorization to sell the Property.

## II. RESPONSE

**CREDITOR DOES NOT OPPOSE THE DEBTOR'S MOTION TO SELL ON THE CONDITION THAT THE FOLLOWING PROVISIONS ARE INCLUDED IN THE ORDER:**

Creditor's non-opposition to the Debtor's Motion to Sell is contingent upon its Claim being paid off in full or in accordance with any short sale approved by Creditor as follows:

1. Creditor's Claim shall be paid off in full or in accordance with any short sale approval authorized by Creditor;

2. Creditor shall be permitted to submit an updated payoff demand to the applicable escrow or title company facilitating the sale so that Creditor's Claim is paid in full at the time the sale of the Property is finalized; and

3. In the event that the sale of the Property does not take place, Creditor shall retain its Lien for the full amount due under the Subject Loan.

/././

/././

/././

/././

/././

---

[1] The Note and Deed are collectively referred to as the "Subject Loan", "Claim" or "Lien."

Case: 19-41714   Doc# 38   Filed: 10/08/19   Entered: 10/08/19 11:33:16   Page 2 of 26

1    Based on the foregoing, Creditor submits its Response to the Debtor's Motion to Sell, and

2    respectfully requests that the above-referenced provisions be included in any Order granting the

3    Debtor's Motion to Sell.

4    Dated: <u>October 8, 2019</u>                    ALDRIDGE PITE, LLP

5

6                                                    <u>*/s/ Gilbert R. Yabes*</u>

7                                                    GILBERT R. YABES
                                                     Attorneys for MEB Loan Trust

8

Prepared by: WANDA VATANAPRATEPAKORN

# NOTE

LOAN #: ████████

MARCH 16, 2007
*Date*

City

CALIFORNIA
*State*

938 COUNTRY GLEN LN, BRENTWOOD, CA 94513-6152
*Property Address*

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 183,955.00 (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is
Countrywide Bank, FSB.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

## 2. INTEREST

I will pay interest at a yearly rate of 6.000 %.
Interest will be charged on unpaid principal until the full amount of principal has been paid.

## 3. PAYMENTS

I will pay principal and interest by making payments each month of U.S. $ 1,102.90
I will make my payments on the FIRST day of each month beginning on MAY 01, 2007 . I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this Note. If, on APRIL 01, 2037 , I still owe amounts under this Note, I will pay all those amounts, in full, on that date.
I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

## 4. BORROWER'S FAILURE TO PAY AS REQUIRED

610 164913068 N 001 001

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any of my monthly payments by the end of FIFTEEN calendar days after the date it is due, I will promptly pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment, but not less than U.S. $ NOT APPLICABLE and not more than U.S. $ NOT APPLICABLE . I will pay this late charge only once on any late payment.

### (B) Notice from Note Holder

If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date I will be in default. That date must be at least 10 days after the date on which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me.

### (C) Default

If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (D) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 5. THIS NOTE SECURED BY A DEED OF TRUST

In addition to the protections given to the Note Holder under this Note, a Deed of Trust, dated the same day as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Deed of Trust describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.
Some of those conditions are described as follows:
**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's

---

**CALIFORNIA - SECOND MORTGAGE - 6/84 - FNMA/FHLMC UNIFORM INSTRUMENT**

Form 3905

VMP -75(CA) (0204)    CHL (06/05)(d)    VMP Mortgage Solutions, Inc. (800)521-7291

EXHIBIT A

prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

## 6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

## 7. BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

## 8. GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

## 9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

Prepayment Penalty Rider attached hereto and made part hereof.

### NOTICE TO BORROWER

**Do not sign this Note if it contains blank spaces.**
**All spaces should be completed before you sign.**

| | |
|---|---|
| _Tanya L. LaFleur_ (Seal) | _Gary G. LaFleur_ (Seal) |
| TANYA L. LAFLEUR -Borrower | GARY G. LAFLEUR -Borrower |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |
| | *(Sign Original Only)* |

Form 3905

Case: 19-41714   Doc# 38   Filed: 10/08/19   Entered: 10/08/19 11:33:16   Page 5 of 26

EXHIBIT A

PAY TO THE ORDER OF
**COUNTRYWIDE BANK, FSB**
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY: *Michele Sjolander*

MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

PAY TO THE ORDER OF
**Countrywide Home Loans, Inc**
WITHOUT RECOURSE
·COUNTRYWIDE BANK, FSB

BY _____ *Laurie Meder*
LAURIE MEDER
SENIOR VICE PRESIDENT

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB
FKA COUNTRYWIDE BANK, N.A.

BY *Laurie Meder*
LAURIE MEDER
SENIOR VICE PRESIDENT

EXHIBIT A

 

Prepared by: WANDA VATANAPRATEPAKORN

**Countrywide Bank, FSB.**

DATE: 03/16/2007
BORROWER: TANYA L. LAFLEUR
CASE #:
LOAN #: ███████
PROPERTY ADDRESS: 938 COUNTRY GLEN LN
BRENTWOOD, CA 94513-6152

Branch #: 0001234
21051 WARNER CENTER LN STE 150
WOODLAND HILLS, CA 91367
Phone: (800)611-6526
Br Fax No.: (818)593-2009

## PREPAYMENT PENALTY ADDENDUM

THIS PREPAYMENT PENALTY ADDENDUM is dated  MARCH 16, 2007 , and is incorporated into and amends and supplements the Note of the same date (the "Note") given by me to

Countrywide Bank, FSB.

(the "Lender"). The Note is secured by a Mortgage or Deed of Trust or comparable security instrument (the "Security Instrument") covering the property (the "Property") identified in the Security Instrument.

Section 6 of the Note is replaced with the following two paragraphs:

> I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid Principal is known as a "Full Prepayment." A prepayment of only part of the unpaid Principal is known as a "Partial Prepayment." When I make a Partial or Full Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a prepayment if I have not made all the monthly payments due under this Note.

> Subject to the Prepayment Penalty specified below, I may make a Full Prepayment or Partial Prepayments of my obligation.  The Note Holder will use all of my prepayments to reduce the amount of Principal that I owe under the Note.  If I make a Partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment.

• 2ND Lien Prepayment Penalty Addendum
1D102-XX (11/06)(d/i)

Page 1 of 3

EXHIBIT A

If I make a full prepayment, the Note Holder may charge me for the privilege of prepayment if I prepay the loan in the first 60 months after the date of the loan. The prepayment penalty shall be an amount equal to six months advance interest on the amount of the prepayment that, when added to all other partial prepayments during the twelve-month period immediately preceding the date of the full prepayment, exceeds 20% of the original principal amount of this Note.

EXHIBIT A

All other terms and conditions of the above referenced Note remain in full force and effect.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Tanya L. Lafleur_

TANYA L. LAFLEUR        Date: _3/23/07_

GARY G. LAFLEUR        Date: _3/23/07_

Date: _____

Date: _____

Recording Requested By:
W. SCHNIEDERS



CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2007-0093657-00

Check Number

Friday, MAR 30, 2007 09:07:21
FRE      $1.00 MOD    $10.00 REC   $14.00
         $9.00 DAF    $1.80 REF    $0.20
Total Pd   $36.00        Nbr-0003653875
                              1rc/R9/1-10

Prepared By:
WANDA VATANAPRATEPAKORN

[Escrow/Closing #] ███                    [Doc ID #] ███

# DEED OF TRUST ~~AND REQUEST FOR NOTICE OF DEFAULT~~

MIN ███

THIS DEED OF TRUST is made this SIXTEENTH         day of MARCH, 2007         , among the
Trustor,
TANYA L LAFLEUR, AND GARY G LAFLEUR, WIFE AND HUSBAND AS JOINT TENANTS



whose address is
938 COUNTRY GLEN LN, BRENTWOOD, CA 94513-6152
(herein "Borrower"),
RECONTRUST COMPANY, N.A.
225 WEST HILLCREST DRIVE, MSN: TO-02, THOUSAND OAKS, CA 91360
(herein "Trustee"), and the Beneficiary, Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as
nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing
under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel.
(888) 679-MERS.
Countrywide Bank, FSB.
A FED SVGS BANK                                                            ("Lender") is
organized and existing under the laws of  THE UNITED STATES         , and has an address of
1199 North Fairfax St. Ste.500, Alexandria, VA 22314

---

**CALIFORNIA - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS**

VMP® -76N(CA) (0510)      CHL (08/06)(d)           Page 1 of 9

Form 3805
Amended 9/99

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of   CONTRA COSTA                                         , State of California:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number:                                                which has the address of
938 COUNTRY GLEN LN                                                                        [Street]
BRENTWOOD                                    [City], California  94513-6152      [ZIP Code] (herein "Property
Address");

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Deed of Trust.

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated   MARCH 16, 2007           and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $183,955.00        , with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on  APRIL 01, 2037           ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially

Case: 19-41714   Doc# 38   Filed: 10/08/19   Entered: 10/08/19 11:33:16   Page 11 of
26
EXHIBIT A

and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed

Case: 19-41714    Doc# 38    Filed: 10/08/19    Entered: 10/08/19 11:33:16    Page 12 of 26

EXHIBIT A

of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has a priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be

Case: 19-41714    Doc# 38    Filed: 10/08/19    Entered: 10/08/19 11:33:16    Page 13 of 26

EXHIBIT A

given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and this Deed of Trust at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender, prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.**

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

Case: 19-41714    Doc# 38    Filed: 10/08/19    Entered: 10/08/19 11:33:16    Page 14 of 26

EXHIBIT A

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Deed of Trust or at any time prior to entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

**21. Substitute Trustee.** Lender, at Lender's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county where the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Instrument is recorded and the name and address of the successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. The procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**22. Request for Notices.** Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address which is the Property Address. Lender requests that copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Lender's address, as set forth on page one of this Deed of Trust, as provided by Section 2924(b) of the Civil Code of California.

**23. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Case: 19-41714    Doc# 38    Filed: 10/08/19    Entered: 10/08/19 11:33:16    Page 15 of 26

EXHIBIT A

## REQUEST FOR NOTICE OF DEFAULT
### ——————AND FORECLOSURE UNDER SUPERIOR——————
## MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded _____, in Book _____, Page _____, records of   CONTRA COSTA _____ County, or filed for record with recorder's serial number _____,   CONTRA COSTA _____ County, California, executed by
TANYA L LAFLEUR, AND GARY G LAFLEUR, WIFE AND HUSBAND AS JOINT TENANTS

as trustor (or mortgagor) in which
COUNTRYWIDE HOME LOANS
is named as beneficiary (or mortgagee) and
C
as trustee be mailed to
Countrywide Bank, FSB.
at PO Box 10329, SV-225, Van Nuys, CA 91405



Case: 19-41714    Doc# 38    Filed: 10/08/19    Entered: 10/08/19 11:33:16    Page 16 of 26

EXHIBIT A

DOC ID #: ██████████

NOTICE: A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.

_____

State of California
County of
On _____, before me_____
_____, personally appeared
_____
_____
_____, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____


IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

_____
TANYA L. LAFLEUR                                          -Borrower

_____
GARY G. LAFLEUR                                          -Borrower

_____
                                                         -Borrower

_____
                                                         -Borrower

*[Sign Original Only]*

VMP® -76N(CA) (0510)        CHL (08/06)           Page 8 of 9                    Form 3805

EXHIBIT A

State of California
County of *Contra Costa*
On *March 23, 2007* _____ , before me *Santa Everhardt, Notary Public* _____ , personally appeared
*Tanya L. Lafleur & Gary G. Lafleur* _____

_____ , ~~personally known to me~~
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that ~~he/she~~/they executed the same in ~~his/her~~/their authorized
capacity(ies), and that by ~~his/her~~/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

SANTA EVERHARDT
COMM. #1680099
Notary Public-California
CONTRA COSTA COUNTY
My Comm. Exp. Aug 6, 2010

ESI1                    ESI1

-76N(CA) (0510)          CHL (08/06)                    Page 9 of 9                                    Form 3805

EXHIBIT A

## Exhibit "A"
## Legal Description

All that certain parcel of land situate in the City of Brentwood, County of Contra Costa, State of California, being known and designated as Lot 46, as shown on the map of Subdivision 8196, filed June 1, 1999, Map Book 411, Page 3, Contra Costa County Records, and as corrected by Certificate of Correction, recorded January 2, 2000, Series No. 2000-7776, Official Records.

Subject to that certain Declaration of Covenants, Conditions and Restrictions recorded February 4, 1999, Series No. 99-30932 and Declaration of Annexation thereunder recorded June 29, 1999, Series No. 99-172322, Official Records of Contra Costa County and any modifications and/or supplements thereof are hereby incorporated into the body of this instrument as though fully set forth herein.

Tax I.D.: 017-500-046

Tax/Parcel ID:

1358231

END OF DOCUMENT
END OF DOCUMENT
EXHIBIT A

Investor Loan # N/A

After Recording Return To:
Attention: Loss Mitigation
7360 South Kyrene Road, T214
Tempe, AZ 85283

This document was prepared by Daisy Rivera



_____[Space Above This Line For Recording Data]_____

# HOME AFFORDABLE 2nd LIEN MODIFICATION AGREEMENT
## 2nd Lien Modification Program ("2MP")

**P.M**

**Mers**

Borrower ("I"):[1] TANYA L LAFLEUR and GARY G LAFLEUR
Lender or Servicer ("Lender"): Ditech Financial LLC
Date of second lien mortgage, deed of trust, or security deed ("2nd Mortgage") and Note or Line of Credit
Agreement ("Note"): 3/16/2007
Loan Number: ▆▆▆▆▆▆
Property Address ("Property"): 938 COUNTRY GLEN LN, BRENTWOOD, CA 94513

MIN: 100133700020771609
'MERS' is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for lender and lender's successors and assigns. MERS is the mortgagee under the Mortgage. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501 2026, (888) 679 MERS.

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable 2nd Lien Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the 2nd Mortgage on the Property, and (2) the Note secured by the 2nd Mortgage. The 2nd Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations.** I certify, represent to Lender and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default or I believe I will be in default in the near future under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future, and (iii) as of the effective date of this Agreement, I have received a loan modification for my 1st mortgage loan secured by the Property (which mortgage loan, as modified, is herein referred to as the "1st Mortgage");

   B. I live in the Property as my principal residence, and the Property has not been condemned;

   C. There has been no change in the ownership of the Property since I signed the Loan Documents;

   D. I have provided documentation in connection with the 1st Mortgage modification application for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I choose to rely on such income when requesting to qualify for the 1st Lien Modification and 2nd Lien Modification Program ("Program");

_____
[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document, words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

**ORIGINAL**

E.   Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement and to the 1st Mortgage lender, including the documents and information regarding my eligibility for the Program, are true and correct;

F.   I have made or will make all payments required under the 1st Mortgage and I am not in default under the terms of the 1st Mortgage.

2. **Acknowledgements and Preconditions to Modification.**  I understand and acknowledge that:

A.   TIME IS OF THE ESSENCE under this Agreement.  This means I must make all payments on or before the days that they are due;

B.   If prior to the Modification Effective Date as set forth in Section 3, the Lender determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate.  In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

C.   I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, (ii) I receive from the lender for my 1st Mortgage a copy of the modification agreement for the 1st Mortgage signed by the lender, and (iii) the Modification Effective Date (as defined in Section 3) has occurred.  I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement or any other requirements of the Program;

D.   I understand and agree that if I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents, I am voluntarily entering into this Agreement for the benefits to be obtained thereby and not as a reaffirmation of the debt evidenced by the Note, and I further understand and agree, and the Lender, by its execution of this Agreement also agrees, that nothing contained herein is intended to impose personal liability for the Loan in violation of such discharge.

3. **The Modification.**  If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 2/1/2016 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived.  I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, or the modification under the 1st Mortgage is for any reason not in full force and effect as of the Modification Effective Date, this modification will not take effect.  The first modified payment will be due on 2/1/2016.

A.   The new Maturity Date will be: 2/1/2055.

B.   The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The modified principal balance is less principal that has been forgiven in the amount of $0.00. In any event, the modified principal balance of my Note will be $160,864.63 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance.

C.   Interest at the rate of 1.0% will begin to accrue on the New Principal Balance as of 1/1/2016 ("Interest Rate Effective Date").  Beginning on the fifth (5th) anniversary date of the Interest Rate Effective Date, the interest rate will adjust to the same interest rate scheduled to be in effect on the 1st Mortgage, and will thereafter follow the same terms and conditions applicable to the 1st Mortgage (which interest rate terms and conditions are hereby incorporated into this Agreement and made part thereof). Lender reserves the right to adjust the interest rate to a rate lower than the rate on the 1st Mortgage, but in no event shall the interest rate on this Agreement exceed the maximum interest rate that could be in effect at any time in the 1st Mortgage.  The first payment on the New Principal Balance will be due on 2/1/2016.

I will begin to make modified monthly payments on 2/1/2016 and on the same day of each month thereafter. The initial payment will be in the amount of $414.52. With each scheduled interest rate adjustment, my monthly payment will be adjusted to an amount necessary to repay the remaining unpaid balance of the New Principal Balance as of the interest rate adjustment date in substantially equal monthly installments of principal and interest over the remaining term of the Loan. I understand that the Lender will provide me with notice of my new interest rate and payment amount prior to the due date of any such new payment.

Notwithstanding the foregoing, I agree that unless sooner paid, all principal, interest and other amounts due under the Loan Documents shall be paid on the new Maturity Date.

The above terms in this Section 3.C. shall replace and supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4. **Additional Agreements.** I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender for my 2nd Mortgage.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

E.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

F.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the 2nd Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the 2nd Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the 2nd Mortgage without further notice or demand on me.

G.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted § 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

Case: 19-44714   Doc# 38   Filed: 10/08/19   Entered: 10/08/19 11:33:16   Page 22 of 26

LTR-1036

EXHIBIT B

H. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

I. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in second lien position and/or is fully enforceable upon modification and that if, under any circumstance and notwithstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

J. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and that this Agreement, if it contains any such error, including but not limited to a mathematical, typographical or other computer-generated error, will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the 2nd Lien Modification program.

K. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

L. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the 2nd Lien Modification Program, including marketing the Home Affordable Modification Program or the 2nd Lien Modification Program, conducting surveys or providing marketing research or other borrower outreach, data processing and technical systems consulting; and (v) any HUD certified housing counselor.

M. I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.M. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

N. If I receive a separate notice from Lender that I am required to attend additional debt management counseling, I agree to promptly attend such counseling and provide evidence of attendance to Lender upon request.

O. If my loan is a home equity line of credit ("HELOC"), I understand that (i) access to funds in the line of credit will be permanently terminated, so I am unable to obtain any further advances, notwithstanding any references in the Loan Documents, or otherwise, to the Loan being a line of credit; (ii) any devices used for accessing the credit line, such as checks or credit cards, are void; (iii) if I have had separate balances on the HELOC that were charged interest at different rates, including fixes or variable rates, all balances are combined into a single balance that will be charged interest at the rate established in Section 3 of this Agreement, and I will not have the option of locking in or electing different interest rates or other payment terms in the future; (iv) if I have had the option to pay interest-only payments on any balances, all payments under this Agreement will be set as forth in Section 3 of this Agreement; and (iv) if I have had special incentive interest rates involving a reduction in my interest rate for automatic payments or other relationships with the Lender, these special incentives no longer apply.

P. Any principal forgiveness will be reported to the Internal Revenue Service and may have tax consequences. Therefore, I am advised to seek guidance from a tax professional. I will contact Ditech at 1-800-643-0202 if I do not want principal forgiveness.

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)
Borrower (Loan Number 89846041)

_____ (Seal)
Borrower (Loan Number 89846041)

1/30/2016
Date

1/30/2016
Date

Ditech Financial LLC
Lender

Jason Braxton
Default Services Director

FEB 2 2 2016
_____
Date

_____
Jason Braxton
Default Services Director

_____
Mortgage Electronic Registration
Systems, Inc - Mortgagee

The servicer may execute the HMP Agreement on behalf of MERS and, if applicable, submit it for recordation.

This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.

_____ [Space Below This Line For Acknowledgement] _____

Joseph C. Delmotte (CA SBN 259460)
jdelmotte@aldridgepite.com
Gilbert R. Yabes (CA SBN 267388)
gyabes@aldridgepite.com
**ALDRIDGE PITE, LLP**
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933
Telephone: (858) 750-7600
Facsimile: (619) 590-1385

Attorneys for
MEB Loan Trust

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA - OAKLAND DIVISION

| | |
|---|---|
| In re | Case No. 19-41714-RLE |
| GARY LAFLEUR, | Chapter 13 |
| Debtor. | |
| | **PROOF OF SERVICE** |

I, Stephanie M. Brown, declare that:

I am employed in the County of San Diego, California. My business address is: 4375 Jutland Drive, Suite 200; P.O. Box 17933, San Diego, CA 92177-0933. I am over the age of eighteen years and not a party to this cause.

On October 8, 2019, I caused the following documents:

- **Conditional Non-Opposition to Debtor's Motion To Sell Real Property;**

to be served in said cause by placing a copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States Mail at San Diego, California, and/or via electronic means pursuant to Bankruptcy Local Rule 9013-3(c) as follows:

**<u>DEBTOR</u>**
Gary LaFleur
938 Country Glen Lane
Brentwood, CA 94513
(Via U.S. Mail)

- 1 -
PROOF OF SERVICE

**DEBTOR'S ATTORNEY**
Joseph Brian Angelo
Gale, Angelo, Johnson and Pruett, P.C.
1430 Blue Oaks Blvd. #200
Roseville, CA 95747
jangelo@gajplaw.com
(Via NEF)

**TRUSTEE**
Martha G. Bronitsky
P.O. Box 5004
Hayward, CA 94540
13trustee@oak13.com
(Via NEF)

**U.S. TRUSTEE**
U.S. Trustee
Department of Justice
USTPRegion17.OA.ECF@usdoj.gov
(Via NEF)

**OTHER INTERESTED PARTIES**
Tanya Lafleur
938 Country Gln Ln
Brentwood, CA 94513
(Via U.S Mail)

I declare under penalty of perjury that the foregoing is true and correct.

Dated: <u>October 8, 2019</u>          <u>/s/  Stephanie M. Brown</u>
                                        STEPHANIE M. BROWN